IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| AMANDA DUGAL, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FORTUNEBANK, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff Amanda Dugal, by and through her undersigned counsel, and for and in support of her complaint, states as follows:

### Parties

1. Plaintiff Amanda Dugal is an individual with her primary residence in the Eastern District of Missouri.

2. At all times pertinent herein, Dugal was employed by Defendant FortuneBank.

3. Defendant FortuneBank, is a Missouri Trust Corporation that is regulated by the Missouri Division of Finance, has an office in and is head-quartered in Jefferson County, Missouri.

4. Defendant FortuneBank is a federally insured deposit corporation and subject to the oversight of the Federal Deposit Insurance Corporation (F.D.I.C.).

## Jurisdiction and Venue

5. This act is brought pursuant to the whistleblower provisions of the Federal Deposit Insurance Act.

6. The Court has subject matter jurisdiction over this matter pursuant to 12 U.S.C. §1831j and 28 U.S.C. § 1331.

7. The Court has supplemental jurisdiction to consider the Missouri state law claim asserted in Count II pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this Court as all parties reside in the District and the actions complained of occurred within the District.

## Allegations Common to All Counts

9. From January 2015 to September 30, 2016, Dugal was employed by the Bank as Loan Coordinator and Administrative Assistant. At that time her job duties included but were not limited to, assisting the Festus Regional President in addition to dealing with customer's daily needs, helping and preparing new loans and renewals for closing, assisting in clearing exceptions to the portfolio, and getting timely payments on loans.

10. From October 1, 2016, to the date of her wrongful and illegal termination, Dugal was employed by the Bank as a Loan Coordinator. Dugal's job duties as a Loan Coordinator included, but were not limited to, working with customers dealing with their daily needs, helping and preparing new loans and renewals for closing, assisting in clearing exceptions to the portfolio, getting timely payments on loans, increasing efficiency within the loan administration, and

improving the overall quality and accuracy of the loan files and data integrity of the loan system.

11. Dugal was not an officer in the bank, nor was she a shareholder.

12. From January 2015 to September 30, 2016, Dugal reported directly to Darren Gosling, the Bank's Chief Lending Officer and Regional President.

13. Gosling was an officer of the bank.

14. Gosling had developed an over-the-road truck loan portfolio (hereinafter "Gosling OTR Portfolio").

15. On information and belief in or around 2013, the Gosling OTR Portfolio was underperforming and experiencing deepening losses.

16. In 2013 / 2014, F.D.I.C. investigators had reviewed the Gosling OTR Portfolio and told bank management that the portfolio was too risky and should be controlled. An F.D.I.C. investigator told the Bank they should take losses and shut down the portfolio.

17. Dan Jones, chairman of the bank's board, was clear with Gosling that any loss on the Bank's investment portfolio was unacceptable. Gosling was told to turn the OTR loan portfolio around and make a profit so that the bank would not take a loss.

18. Despite cautions from the F.D.I.C., Dan Jones continued to put pressure on Gosling to avoid losses on the Gosling OTR Portfolio.

19. In September 2016 Darren Gosling left employment with the bank.

20. Shortly after Gosling's departure, Dugal was brought into a private meeting with Bank Chairman Dan Jones and asked for a commitment of loyalty to the bank.

21. In February 2017, the bank was visited by an investigator with the F.D.I.C. who again inspected the Gosling OTR Portfolio.

22. During that February 2017 audit, Dugal was interviewed by the F.D.I.C. investigator and asked about the Gosling OTR Portfolio. Dugal provided truthful responses and information to the investigator.

23. Dugal reported her contact with the investigator to her superiors at the bank who questioned her on the scope of the F.D.I.C.'s questions and her responses.

24. On information and belief, Bank officials recognized that they were coming under increased F.D.I.C. scrutiny and would be required to shut down the Gosling OTR portfolio at a financial loss.

25. Bank officials attempted to determine ways in which to stem the financial damage of such a large portfolio loss and looked to insurance.

26. To receive insurance coverage for this loss, and make it a covered loss under the policy, it would have to be characterized by the Bank as employee misconduct rather than a bad investment.

27. Shortly after reporting her cooperation with the F.D.I.C. investigator, Dugal was placed on "administrative leave."

28. When she was placed on "administrative leave," Dugal was told that the bank was advised by legal counsel that "[Dugal and the Bank] needed to separate during the [F.D.I.C.] investigation."

29. Dugal was specifically told that "she [was] not being fired", and that the leave is "not what they wanted to do, they were advised [by their legal counsel] to do it."

30. Shortly after being placed on administrative leave, Dugal was provided a "separation agreement" by the Bank.

31. This agreement was non-standard, overly broad, not mutual, and seemed designed to protect the Bank against a possible F.D.I.C. investigation. In short, it appeared to be a set-up on the part of the bank.

32. The proposed separation agreement was non-standard, drafted by the Bank's counsel, and clearly not presented in good faith. At the time this proposed agreement was drafted, the Bank had already intended to terminate Dugal and attempt to blame her for the Gosling OTR Portfolio losses.

33. Dugal refused to enter into this proposed agreement and was immediately thereafter terminated.

34. On April 7, 2017, FortuneBank sued Dugal in the Circuit Court of Jefferson County in an action titled *Fortunebank v. Darren Gosling, et al. (Cause No. 17JE-CC00281)* for (a) breach of fiduciary duty; and (b) civil conspiracy.

35. Also named in that lawsuit was Darren Gosling.

36. This state court lawsuit was filed in bad faith and does not assert a meritorious cause of action.

37. On information and belief, a member of the Bank's Board of Directors, who is also an attorney, privately told Gosling that the Bank "had to" go after him for fraud related to the losses with the Gosling OTR Portfolio in order for insurance coverage to apply so that the bank would not have to take a loss on the OTR Portfolio.

38. On information and belief, after the termination of Dugal, members of the Board of Directors for the Bank (including a lawyer member of the Board), told Gosling to retain legal counsel (in advance of suing him), referred Gosling to an attorney they knew, and coached Gosling on his rights in Bankruptcy Court to protect himself from the civil litigation they were filing against him – all in an effort to foster his cooperation in making this false insurance claim.

### Count I – Retaliatory Discharge (12 U.S.C. §1831j)

Plaintiff incorporates the preceding paragraphs of this petition as if fully set forth herein.

39. FortuneBank, in violation of 12 U.S. Code § 1831j, discharged Plaintiff because she provided information to the F.D.I.C. regarding a possible violation of law or regulation, and/or gross mismanagement, and/or an abuse of authority by the Bank and certain directors, officers, and other employees of the institution.

40. The information Dugal provided to the F.D.I.C. specifically contradicted the Banks claim of employee misconduct and instead identified the

portfolio as a bad investment which should have been recorded as a loss much earlier.

41. Dugal's cooperation with the F.D.I.C. was at a minimum a contributing factor in the decision to terminate her.

42. The Defendant Bank acted with evil motive and reckless indifference to the rights of the Plaintiff.

43. The Defendant Bank knew, or should have known that its actions would damage Plaintiff Dugal.

44. Pursuant to statute, a copy of this complaint is also being filed with the F.D.I.C.

WHEREFORE, Plaintiff pray for judgment against the Bank for actual damages in an amount that is determined by the finder of fact to be fair and reasonable, but in excess of $75,00.00; for an award of punitive damages in an amount determined by the finder of fact to deter future misconduct of this sort from this and similar defendants; for her attorneys' fees and costs; and for such further relief as the Court may deem just and proper in the premises.

### Count II– Wrongful Termination (Public Policy)

Plaintiff incorporates the preceding paragraphs of this complaint as if fully set forth herein.

45. Federal law requires people to be truthful with federal investigators. 18 USC 1001 et seq., including 18 U.S.C. §1007.

46. Missouri public policy encourages employees to communicate with government investigators about their employers' actions without fear of retaliation.

47. Dugal was terminated for (a) cooperating with the F.D.I.C. investigation into the Gosling OTR Portfolio; (b) in an attempt to make her unavailable to F.D.I.C. investigators; and (c) in an effort to utilize her in filing a fraudulent insurance claim.

48. Terminating Dugal in this manner is injurious to the public and against the public good.

49. As a result of her termination from the Bank, Dugal has suffered periods of unemployment and underemployment, and has thereby been damaged.

50. As a result of the bank's actions, Dugal has suffered mental stress, embarrassment, and loss of reputation.

51. As a result of the Bank's bad faith lawsuit, Dugal has been forced to expend legal fees defending herself.

52. The actions of the Defendant in terminating Dugal and fraudulently attempting to use her as a scapegoat for the Bank's losses was a wanton, willful and outrageous act.

53. The Defendant Bank acted with evil motive and reckless indifference to the rights of the Plaintiff.

54. The Defendant Bank knew, or should have known that its actions would damage Plaintiff Dugal.

WHEREFORE, Plaintiff pray for judgment against the Bank for actual damages in an amount that is determined by the finder of fact to be fair and reasonable, but in excess of $75,000.00; for an award of punitive damages in an amount determined by the finder of fact to deter future misconduct of this sort from this and similar defendants; for her attorneys' fees and costs; and for such further relief as the Court may deem just and proper in the premises.

Respectfully submitted,

NEWTON BARTH, L.L.P.

By: _____
Talmage E. Newton IV, MO56647
tnewton@newtonbarth.com
Brandy B. Barth, MO56668
bbarth@newtonbarth.com
555 Washington Ave., Suite 420
St. Louis, MO 63101
(314) 272-4490 - Telephone
(314) 762-6710 - Facsimile

Attorneys for Plaintiff Amanda Dugal

FILED:     August 28, 2017