UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMANDA DUGAL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     vs. | )   Case No. 4:17-CV-2318 PLC |
| | ) |
| FORTUNEBANK, | ) |
| | ) |
|     Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant FortuneBank's motion to dismiss Count II of Plaintiff Amanda Dugal's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 6). Plaintiff opposes the motion. (ECF No. 11). For the reasons that follow, the Court denies Defendant's motion to dismiss.

### I.    *Factual and Procedural Background*

The facts, as alleged in the complaint, are as follows: Plaintiff worked for Defendant as a loan coordinator from January 2015 until the date of her termination.[2] (ECF No. 1 at ¶ 9). From January 2015 until September 30, 2016, Plaintiff reported directly to Defendant's chief lending officer and regional president, Darren Gosling. (Id. at ¶ 12).

Gosling had developed an over-the-road truck-loan portfolio ("Gosling Portfolio") that was "underperforming and experiencing deepening losses." (Id. at ¶¶ 14-15). In 2013 or 2014, investigators from the Federal Deposit Insurance Corporation ("FDIC") reviewed the Gosling Portfolio and advised bank management that they "should take losses and shut down the

---

[1] Plaintiff Amanda Dugal and Defendant FortuneBank consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).
[2] Plaintiff's complaint does not allege her termination date.

1

portfolio." (Id. at ¶ 16). Instead of heeding that advice, Defendant's chairman, Dan Jones, directed Gosling to "turn the [Gosling P]ortfolio around and make a profit so that the bank would not take a loss." (Id. at ¶¶17-18).

Gosling left Defendant's employment on September 30, 2016. (Id. at ¶ 19). Shortly thereafter, Jones invited Plaintiff to a private meeting and "asked [her] for a commitment of loyalty to the bank." (Id. at ¶ 20).

In February 2017, the FDIC again inspected the Gosling Portfolio, and an FDIC investigator interviewed Plaintiff. (Id. at ¶¶ 21-22). After providing the FDIC investigator "truthful responses and information," Plaintiff recounted her interview to "her superiors at the bank[.]" (Id. at ¶¶ 22-23).

A short time later, Defendant placed Plaintiff on "administrative leave." (Id. at ¶ 27). Defendant assured Plaintiff that "she [was] not being fired,"[3] and Defendant's attorney informed Plaintiff that "[Plaintiff and Defendant] needed to separate during the [FDIC] investigation." (Id. at ¶¶ 27-28). Defendant presented Plaintiff with a separation agreement that was "non-standard" and "seemed designed to protect [Defendant] against a possible FDIC investigation." (Id. at ¶¶ 30-32). Plaintiff refused to sign the agreement, and Defendant terminated her employment. (Id. at ¶ 33).

On April 7, 2017, Defendant sued Plaintiff and Gosling in state court for breach of fiduciary duty and civil conspiracy.[4] (Id. at ¶¶ 34-35). Plaintiff states that Defendant filed the state-court action "in order for insurance coverage to apply so that the bank would not have to

---

[3] Plaintiff alleged neither the name nor title of the individual who made this assurance.
[4] The court takes judicial notice of the pending state-court docket of FortuneBank v. Gosling, et al., Cause No. 17JE-CC00281, (Circuit Court of Jefferson County, filed April 7, 2017). See e.g., Matter of Phillips, 593 F.2d 356, 358 (8th Cir. 1979) (per curiam) (a federal court may properly take judicial notice of state-court proceedings).

take a loss on the [Gosling] Portfolio." (Id. at ¶ 37). Plaintiff filed her two-count complaint in this Court on August 28, 2017. (Id.). In Count I, Plaintiff alleges that Defendant terminated her, in violation of the FDIC's prohibition on retaliation, 12 U.S.C. § 1831j, because she provided information to the FDIC "regarding a possible violation of law or regulation, and/or gross mismanagement, and/or an abuse of authority by the Bank and certain directors, officers, and other employees of the institution." (Id. at ¶¶ 39-44).

In Count II, Plaintiff alleges that Defendant terminated her employment in violation of public policy. (Id. at ¶¶ 45-54). Citing the False Statements Act, 18 U.S.C. § 1001, et seq., and specifically referencing 18 U.S.C. § 1007,[5] Plaintiff claims that "[f]ederal law requires people to be truthful with federal investigators." (Id. at ¶ 45). Additionally, Plaintiff asserts that her termination contravened the Missouri public policy "encourag[ing] employees to communicate with government investigators about their employer's actions without fear of retaliation." (Id. at ¶ 46). According to Plaintiff, Defendant violated federal and Missouri public policy because it terminated her (1) for "cooperating with the F.D.I.C. investigation into the [Gosling Portfolio]" and in an effort to (2) make her unavailable to FDIC investigators and (3) "utilize her in filing a fraudulent insurance claim." (Id. at ¶ 47).

Defendant moved to dismiss Plaintiff's Count II for failure to state a claim. (ECF No. 6). Defendant argues that Plaintiff's claim fails because "it is not based on a well-established or clear mandate of public policy." (Id. at ¶ 2). In regard to Plaintiff's reliance on 18 U.S.C. §

---

[5] Section 1001 imposes criminal liability for making false statements to federal investigators. 18 U.S.C. § 1001(a). Section 1007, which applies specifically to statements to the FDIC, provides: "Whoever, for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation, knowingly makes or invites reliance on a false, forged, or counterfeit statement, document, or thing shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." 18 U.S.C. § 1007.

3

1007, Defendant contends that the statute "merely sets forth the criminal penalties for individuals who provide untruthful information to the FDIC" and Plaintiff does not allege that Defendant asked her to violate that statute. (ECF No. 7 at 7). As to Plaintiff's claim that her termination violated Missouri public policy, Defendant notes that Plaintiff failed to cite any Missouri statute or regulation to support her claim. (Id. at 6). Defendant states: "[Plaintiff's] blanket claim about Missouri public policy is insufficient to establish a clear mandate of public policy sufficient to support a claim for wrongful discharge." (Id.).

In her memorandum in opposition to Defendant's motion to dismiss, Plaintiff asserts, without citation to authority, that "Missouri law provides a cause of action for wrongful termination for retribution against an employee for participating in an investigation and refusing to participate in an illegal scheme."[6] Plaintiff reiterates that Defendant terminated her employment "because of the FDIC investigation" and her "refusal to participate in a fraudulent insurance claim made by [Defendant] to cover their losses on bad loans." (ECF No. 11 at 4).

In reply, Defendant asserts that, because Plaintiff failed to identify "a clearly mandated public policy as codified in a statute, a regulation, or similar source with respect to her claim that 'Missouri public policy encourages employees to communicate with government investigators,' [Plaintiff] has not stated a claim." (ECF No. 13 at 2). As to 18 U.S.C. § 1007, the statute Plaintiff referenced in her complaint, Defendant argues that it is "a general and broad criminal statute" that "does not even remotely address the claims [Plaintiff] makes in her Complaint[.]"

---

[6] The only case Plaintiff cites in support of this proposition is Hughes v. Bodine Aluminum, Inc., 328 S.W.3d 353 (Mo.App.E.D. 2010). However, that case does not involve an employee's participation in an investigation. In Hughes, the defendant employer terminated the plaintiff, a temporary employee, because the plaintiff refused his supervisors' requests for commercial bribes in exchange for job security. Id. at 355. Under Missouri law, commercial bribery is a misdemeanor. Id. at 354 (citing Mo. Rev. Stat. § 570.150). The Court of Appeals reversed the trial court's summary judgment in favor of the defendant because the facts alleged by the plaintiff "violate a strong mandate of public policy against bribery." Id. at 356.

4

(Id. at 3).

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor. Id.

## III. Discussion

Defendant asserts that Plaintiff failed to state a claim for wrongful discharge because she did not identify a well-established or clear mandate of public policy. (ECF No. 6). Plaintiff counters that she pleaded sufficient facts to state a claim that Defendant terminated her employment in violation of a "clear, not vague [public] policy of truthfully participating in federal investigations." (ECF No. 11 at 2).

Plaintiff's employment relationship with Defendant is governed by Missouri law. See, e.g., Callantine v. Staff Builders, Inc., 271 F.3d 1124, 1130 (8th Cir. 2001). Under Missouri law, "[e]mployers may terminate the employment of at-will employees at any time 'for any reason or for no reason.'"[7] Ballard v. Siwak, 521 S.W.3d 296, 300 (Mo.App.E.D. 2017) (quoting Margiotta v. Christian Hosp. Ne. Nw., 315 S.W.3d 342, 346 (Mo. banc 2010)). "However, an

---

[7] It is undisputed that Plaintiff was an at-will employee of Defendant.

5

employer's rights are not unfettered, and Missouri has recognized that an employer may not terminate an at-will employee where the termination would violate a clear mandate of public policy." Id.

The public-policy exception prevents employers from terminating at-will employees "for doing that which is beneficial to society." Fleshner v. Pepose Vision Inst., 304 S.W.3d 81, 92 (Mo. banc 2010). Under this "narrowly drawn" exception, an employer may not terminate an at-will employee for:

> (1) refusing to perform an illegal act or an act contrary to a strong mandate of public policy; (2) reporting the employer or fellow employees to superiors or third parties for their violations of law or public policy; (3) acting in a manner that public policy would encourage; or (4) filing a claim for workers' compensation.

Ballard, 521 S.W.3d at 300 (citing Delaney v. Signature Health Care Found., 376 S.W.3d 55, 57 (Mo.App.E.D. 2012)).

To prevail in an action for wrongful discharge, a plaintiff must identify a "specific statute, regulation or constitutional provision that makes 'a clear statement of public policy.'" Ballard, 521 S.W.3d at 300 (quoting Hedrick v. Jay Wolfe Imports I, LLC, 404 S.W.3d 454, 459 (Mo.App.W.D. 2013)). However, "a plaintiff need not rely on an employer's direct violation of a statute or regulation." Fleshner, 304 S.W.3d at 96 (citing Kirk v. Mercy Hosp. Tri-County, 851 S.W.2d 617, 621 (Mo.App.S.D. 1993)). "Instead, the public policy must be *reflected by* a constitutional provision, statute, regulation promulgated pursuant to statute, or a rule created by a governmental body." Id. (emphasis in original).

Here, Plaintiff claims wrongful termination under the third public-policy exception to the at-will employment doctrine: acting in a manner that public policy would encourage. More specifically, Plaintiff alleges that her termination violated "Missouri public policy encouraging

employees to communicate with government investigators about their employers' actions without fear of retaliation." (ECF No. 1 at ¶ 46). In support of her claim, Plaintiff cites the False Statements Act, 18 U.S.C. Sections 1001, et seq., and specifically points to Section 1007. (ECF No. 1 at ¶¶ 45, 46).

The False Statements Act broadly proscribes false statements made directly or indirectly to the federal government. See United States v. Garfinkel, 29 F.3d 1253, 1255 (8th Cir. 1994). Section 1007 specifically prohibits "false, forged, or counterfeit" statements or documents made "for the purpose of influencing in any way the action of the [FDIC.]" 18 U.S.C. § 1007. In criminalizing such false statements, the statute clearly espouses a public policy encouraging truthfulness in all communications with FDIC agents. See, e.g., Bryan v. Cmty. Bank & Tr., No. 3:14-CV-05111 MDH, 2014 WL 5320867, at *4 (W.D.Mo. Oct. 17, 2014) (in citing the Dodd-Frank Mortgage Reform Act, which clearly reflected a "public policy to eliminate fraud in the context of mortgage loan applications," the plaintiff sufficiently identified the public policy allegedly violated).

In support of its position that the statutes cited by Plaintiff do not constitute clear mandates of public policy, Defendant cites Margiotta, 315 S.W.3d at 346-48. (ECF No. 7 at 5). That case is inapposite. There, the plaintiff employee, a medical image technician, alleged that the defendant hospital terminated him because he reported incidents of patient-care safety violations to his supervisors. Id. at 345. In his petition alleging wrongful discharge in violation of public policy, the plaintiff cited: (1) a federal regulation empowering patients to assert their right "to receive care in a safe setting"; and (2) a state regulation relating to building safety, not patient care. Id. at 348. The Missouri Supreme Court affirmed summary judgment for the defendant because it found that the regulations "cited by the [plaintiff] were so vague and

7

generalized that they were inapplicable to the conduct he reported to his supervisors[.]" Farrow v. Saint Francis Med. Ctr., 407 S.W.3d 579, 596 (Mo. banc 2013) (discussing Margiotta, 315 S.W.3d at 347-48).

Unlike the federal and state regulations cited by the plaintiff in Margiotta, the statute at issue here, which specifically prohibits false statements to FDIC agents, is neither vague nor general. To the contrary, 18 U.S.C. Section 1007 reflects a clear mandate of public policy encouraging honest communications with FDIC agents. The cited statutes, coupled with Plaintiff's allegations that Defendant terminated her employment because she participated in an FDIC investigation, sufficiently identify the public policy allegedly violated to withstand dismissal for failure to state a claim. See, e.g., Fleshner, 304 S.W.3d at 96-97 (because Missouri's minimum wage law reflected a public policy encouraging employees to cooperate with government labor investigators, the plaintiff employee made a submissible case for wrongful discharge when she alleged that the defendant terminated her employment because she spoke with investigators from the United States Department of Labor).

## IV. *Conclusion*

For the above reasons, the Court finds that Plaintiff's complaint states a claim for wrongful discharge that is plausible on its face. Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Defendant's motion to dismiss Count II of Plaintiff's complaint (ECF No. 6) is **DENIED**.

*/s/ Patricia L. Cohen*
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 11th day of December, 2017